Patricia Lee Refo (017032)
Kelly A. Kszywienski (025578)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
prefo@swlaw.com
kkszywienski@swlaw.com

William J. McNichol, Jr.
Thomas H. Suddath, Jr.
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
wmcnichol@reedsmith.com
tsuddath@reedsmith.com

*Attorneys for Plaintiff/Counterclaim Defendant Medicis Pharmaceutical Corporation*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medicis Pharmaceutical Corporation, | No. 2:10-cv-01780-JAT |
| Plaintiff/Counterclaim Defendant, | **MEDICIS PHARMACEUTICAL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** |
| v. | |
| Acella Pharmaceuticals, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

|  |  |  | **Page** |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | The Legal Standard for Awarding Fees | | 1 |
| | A. | To Award Fees Under 35 U.S.C. § 285, the Moving Party Must Prove by Clear and Convincing Evidence that the Case is Exceptional and that an Award of Fees is Appropriate | 1 |
| | B. | An Award of Fees Under the Court's Inherent Powers Is Appropriate Only When a Case Is "Beyond Exceptional" | 2 |
| | C. | Any Award Must be Demonstrated to be Proportional to the Alleged Misconduct | 3 |
| III. | Medicis Initiated and Maintained This Action in Good Faith | | 3 |
| | A. | Medicis' Pre-Suit Conduct Was Appropriate and In Good Faith | 3 |
| | | 1. | Legal Standard | 3 |
| | | 2. | Medicis Made a Diligent Pre-filing Investigation, Which Acella Attempted to Frustrate | 4 |
| | B. | Medicis' Preliminary Injunction Motion Was Brought in Good Faith | 6 |
| | | 1. | Medicis' Preliminary Injunction Motion Was Filed to Protect Its Rights as a Patentee | 6 |
| | | 2. | Medicis Properly Moved for Preliminary Injunction Based on the Prospect of Irreparable Harm | 6 |
| | | 3. | Medicis Was Consistently Clear About its Intention to Continue the Commercialization of the '355 Patent After March, 2011 | 7 |
| | | 4. | The Court Did Not Deny Acella's Motion for a Stay Because of Medicis' Preliminary Injunction Motions | 8 |
| | | 5. | Mr. Hampton's Declaration Was Properly Based on Available Information | 8 |
| | | 6. | The Court *Sua Sponte* Rescheduled the Preliminary Injunction Hearing, Creating an Irreconcilable Conflict | 9 |
| | C. | Medicis Pursued This Litigation In Good Faith | 10 |
| | | 1. | The Applicable Legal Standard | 10 |
| | | 2. | Medicis Pursued its Substantially Successful Claim Construction Position in Good Faith | 11 |
| | | 3. | Medicis' Conduct Regarding Discovery Was in Good Faith | 12 |
| | | 4. | Medicis' Position on Obviousness is in Good Faith, and is the Subject of An Appeal to the Federal Circuit | 13 |
| | | 5. | Depositions of Mr. Popp and Mr. Deas Were Good Faith Inquiries Regarding Acella's Spoliation of Evidence and Foreseeability of Damages | 13 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

6.    Medicis Did Not Withhold Any Requested Documents Before the Deposition of Nevin .................................................. 14

7.    Medicis' Marked Documents "Attorneys' Eyes Only" in Good Faith ............................................................................... 15

8.    Medicis' Argument for Lost Profits is in Good Faith ............................ 15

9.    Medicis Was Not Obligated to Accept Acella's Invitations to Mediate .......................................................................................... 16

IV.    Acella's Own Litigation Misconduct Precludes it From Alleging That This Case is Exceptional ................................................................................ 16

A.    Acella Spoiled Evidence Relevant to the Infringement Issue in This Case .......................................................................................... 16

B.    While Destroying its Product, Acella Attempted to Frustrate Medicis' Pre-Suit Investigation by Knowingly Misrepresenting the Properties of the Product ......................................................................... 17

C.    Acella Intentionally Withheld Important Documents ............................ 18

D.    Acella's Reformulation of its Liquid Composition is Evidence that Acella Held Medicis' Actions in Good Faith ..................................... 18

V.    Acella Did Not Comply With Local Rule 54.2 Governing Fee Motions .................... 19

A.    Acella Failed to Consult With Medicis Concerning the Reasonableness of its Proposed Fees Before Filing This Motion ............................ 19

B.    Acella's Time Entries Violate Local Rule 54.2 ................................... 19

C.    Acella's Expert Witness Invoices are Improper ................................... 20

D.    Acella's Research and Development Costs Cannot be Awarded .............. 21

E.    Acella's Incomplete Time Entries Do Not Permit the Court to Evaluate the Reasonableness of the Fees ........................................ 21

F.    Acella's Incomplete Time Entries Cannot be Associated With Any Specific Acts of Alleged Misconduct ............................................ 21

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Other Authorities**

*Amstead Indus., Inc. v. Buckeye Steel Castings,*
   23 F.3d 374 (Fed. Cir. 1999) ............................................................................. 3

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
   605 F.3d 1305 (Fed. Cir. 2010) ........................................................................ 2

*Atlantic Const. Fabrics, Inc. v. Dandy Prods., Inc.,*
   64 Fed. Appx. 757 (Fed. Cir. 2003) ............................................................... 10

*Beckman Instruments, Inc. v. LKB Produkter AB,*
   892 F.2d 1547 (Fed. Cir. 1989) ........................................................................ 3

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.,*
   267 F.3d 1370 (Fed. Cir. 2001) ........................................................................ 2

*Brooks Furniture Mfg. v. Dutailer Intern., Inc.,*
   393 F.3d 1378 (Fed. Cir. 2005) ........................................................................ 2

*Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,*
   15 F.3d 1573 (Fed. Cir. 1993) .......................................................................... 2

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ............................................................................................ 2

*Computer Docking Station Corp. v. Dell, Inc.,*
   519 F.3d 1366 (Fed. Cir. 2008) ...................................................................... 11

*Cybor Corp. v. FAS Techs., Inc.,*
   138 F.3d 1448 (Fed. Cir. 1998) ........................................................................ 2

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
   567 F.3d 1314 (Fed. Cir. 2009) ........................................................................ 2

*Dominant Semiconductor v. Osram GmbH,*
   524 F.3d 1254 (Fed. Cir. 2008) ...................................................................... 11

*Eon-Net LP v. Flagstar Bancorp,*
   653 F.3d 1314 (Fed. Cir. 2011) .............................................................. 1, 10, 11

*Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.,*
   279 F.3d 1022 (Fed. Cir. 2002) ........................................................................ 4

*Forest Labs., Inc. v. Abbott Labs.,*
   339 F.3d 1324 (Fed. Cir. 2003) ..................................................................... 1, 2

*ICU Medical, Inc. v. Alaris Medical Sys., Inc.,*
   No. CV 04-00689 MRP, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) .......... 3

*iLOR, LLC v. Google, Inc.,*
   631 F.3d 1372 (Fed. Cir. 2011) ................................................................... 2, 12

*Judin v. United States,*
   110 F.3d 780 (Fed. Cir. 1997) .......................................................................... 5

*King Instruments Corp. v. Perego,*
   65 F.3d 941 (Fed. Cir. 1995) ..................................................................... 14, 15

*McNeil-PPC, Inc. v. L. Perrigo Co.,*
   337 F.3d 1362 (Fed. Cir. 2003) ........................................................................ 6

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,*
   603 F.3d 943 (Fed. Cir. 2010) .......................................................................... 2

*Melendres v. Arpaio,*
  No. CV-07-2413-PHX-GMS, 2010 WL 582189 (D. Ariz. Feb. 12, 2010) ................................. 14

*Microsoft corp. v. i4i Ltd. P'ship.,*
  131 S. Ct. 2238 (2011) .................................................................................................................. 4

*Motorola, Inc. v. Interdigital Tech. Corp.,*
  121 F.3d 1461 (Fed. Cir. 1997) ................................................................................................. 16

*Old Reliable Wholesale, Inc. v. Cornell Corp.,*
  635 F.3d 539 (Fed. Cir. 2011) ........................................................................................ 2, 11, 16

*Pfizer, Inc. v. Apotex, Inc.,*
  480 F.3d 1348 (Fed. Cir. 2007) ................................................................................................... 4

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
  360 F.3d 1295 (Fed. Cir. 2004) ................................................................................................... 5

*Rambus Inc. v. Infineon Techs. AG,*
  318 F.3d 1081 (Fed. Cir. 2003) ................................................................................................... 3

*Read Corp. v. Portec, Inc.,*
  970 F.2d 816 (Fed. Cir. 1992) .................................................................................................... 3

*ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.,*
  No. 6:08-CV-325, 2010 WL 3238312 (E.D. Tex. Aug 12, 2010) ........................................... 16

*Rite-Hite Corp. v. Kelley Co.,*
  56 F.3d 1538 (Fed. Cir. 1995) ................................................................................................... 14

*Sensonics, Inc. v. Aerosonic Corp.,*
  81 F.3d 1566 (Fed. Cir. 1996) ................................................................................................... 16

*Superior Fireplace Co. v. Majestic Prods. Co.,*
  270 F.3d 1358 (Fed. Cir. 2001) ................................................................................................... 4

*Wedgetail Ltd. v. Huddleston Deluxe, Inc.,*
  576 F.3d 1302 (Fed. Cir. 2009) ................................................................................................... 2

**Statutes**

35 U.S.C. § 282 ................................................................................................................................. 4

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I.    Introduction

On November 3, 2011, this Court granted Defendant and Counter-Plaintiff Acella Pharmaceuticals, LLC's ("Acella") Motion for Summary Judgment.  On November 30, 2011, Plaintiff and Counter-Defendant Medicis Pharmaceutical Corporation ("Medicis") appealed that decision to the Federal Circuit.  On December 30, 2011, Acella filed its Memorandum in Support of its Motion for Attorneys' Fees and Expenses ("Acella's Memorandum").  Pursuant to Local Rule 54.2, Medicis files its response, including this Memorandum and accompanying exhibits.

Acella argues that this case is exceptional due to Medicis' conduct.  Acella's arguments fall into three categories: (1) that Medicis did not conduct a pre-suit investigation, (2) that Medicis' Motion for Preliminary Injunction was improper, and (3) that Medicis' overall behavior amounted to a pattern of inappropriate conduct.

The fact patterns in cases applying § 285 are instructive.  When the facts of this case are compared with cases applying § 285, it will be seen that this case is not exceptional.

Because the relief that Acella requests sounds in equity, Acella's own misconduct throughout this litigation must also be considered.  As will be seen below, Acella's misconduct further supports denial of an award of fees to Acella.  The Court should not award attorney fees to Acella.

## II.    The Legal Standard for Awarding Fees

### A.    To Award Fees Under 35 U.S.C. § 285, the Moving Party Must Prove by Clear and Convincing Evidence that the Case is Exceptional and that an Award of Fees is Appropriate

Courts will not award fees under 35 U.S.C. § 285 unless the moving party proves by clear and convincing evidence that the case is exceptional.  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1323 (Fed. Cir. 2011); *see also Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).  To prove a case is exceptional, the moving party "is required to overcome the presumption that an assertion of infringement of a duly granted patent is made in good faith and show that the patentee's infringement claims were vexatious, unjustified, or frivolous, *and* were pursued in bad faith."  *Medtronic Navigation, Inc. v. BrainLAB*

1

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    *Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (emphasis

2    added).  "Only a limited universe of circumstances warrant a finding of exceptionality in a

3    patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious,

4    unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'"

5    *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (internal

6    citation omitted).  An award of fees under § 285 is limited to circumstances in which it is

7    necessary to prevent a gross injustice.  *Forest Labs., Inc.*, 339 F.3d at 1329; *see also*

8    *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).  A

9    party's failure to prevail on the merits in an infringement action does not, standing alone,

10   render a case exceptional under § 285.  *See Old Reliable Wholesale, Inc. v. Cornell Corp.*,

11   635 F.3d 539 (Fed. Cir. 2011); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305,

12   1315 (Fed. Cir. 2010); *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011);

13   *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d

14   943 (Fed. Cir. 2010); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314

15   (Fed. Cir. 2009); *Brooks Furniture Mfg. v. Dutailer Intern., Inc.*, 393 F.3d 1378 (Fed. Cir.

16   2005); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998); *Carroll Touch, Inc.*

17   *v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573 (Fed. Cir. 1993).

18   **B.    An Award of Fees Under the Court's Inherent Powers Is Appropriate**
19   **Only When a Case Is "Beyond Exceptional"**

20   The United States Supreme Court has provided guidance as to the scope of a court's

21   "inherent power" to award attorneys' fees.  In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44

22   (1991), the Court held that a court may award attorneys' fees under its inherent power as a

23   sanction for disobedience of a court order, or where a party has acted in bad faith,

24   vexaciously, wantonly or for oppressive reasons.  *Chambers*, 501 U.S. at 44-45.  Moreover,

25   the conduct required to invoke a court's inherent power must be extreme, such that the "very

26   temple of justice has been defiled."  *Id.* at 50-51.

27   The Federal Circuit has made note of the strongest requirements of the Supreme

28   Court's decision in *Chambers*, and held that the court's inherent power can be invoked only

1   where a case is "beyond exceptional." *Amstead Indus., Inc. v. Buckeye Steel Castings*, 23

2   F.3d 374, 378-79 (Fed. Cir. 1999). For the reasons explained in this brief, this case is not

3   exceptional, much less "beyond exceptional" under 35 U.S.C. § 285. Thus, an award of

4   attorneys' fees under the Court's inherent power is not appropriate.

5       **C.   Any Award Must be Demonstrated to be Proportional to the Alleged**
6            **Misconduct**

7       In cases deemed exceptional on the basis of litigation misconduct, the amount of the

8   award must be related to the expense caused by the misconduct. *Rambus Inc. v. Infineon*

9   *Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (vacating the district court's award of

10   attorney fees under 35 U.S.C. § 285 for lack of apportionment between the award and the

11   misconduct); *see also Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992);

12   *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989).

13   As such, the party is only entitled to an award of "the portion of its attorney fees which

14   related to the vexatious litigation strategy and other misconduct." *ICU Medical, Inc. v.*

15   *Alaris Medical Sys., Inc.*, No. CV 04-00689 MRP, 2007 WL 6137003, at *2 (C.D. Cal. Apr.

16   16, 2007) (citing *Beckman*, 892 F.2d at 1553).

17   **III.   Medicis Initiated and Maintained This Action in Good Faith**

18       Medicis conducted a reasonable pre-suit investigation, despite Acella's attempt to

19   frustrate that investigation, and Medicis pursued both its preliminary injunction motion and

20   the case as a whole in complete good faith.

21       **A.   Medicis' Pre-Suit Conduct Was Appropriate and In Good Faith**

22       Acella asserts that Medicis' pre-suit investigation was so inadequate as to show that

23   Medicis acted in bad faith. In truth, Medicis made a reasonable, good-faith pre-suit

24   investigation that Acella worked very hard to frustrate.

25          **1.   Legal Standard**

26       To determine whether there was litigation misconduct, courts may consider the

27   adequacy of a party's pre-suit conduct. *See Superior Fireplace Co. v. Majestic Prods. Co.*,

28   270 F.3d 1358, 1377-78 (Fed. Cir. 2001). The touchstone of this inquiry is whether the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3

1   plaintiff acted in good faith in bringing the suit. *See, e.g., Epcon Gas Systems, Inc. v. Bauer*
2   *Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) (affirming the district court's denial of
3   attorney's fees despite party's failure to procure an infringement opinion before filing suit
4   where there was no evidence of bad faith).

5              **2.      Medicis Made a Diligent Pre-filing Investigation, Which Acella**
6                        **Attempted to Frustrate.**

7        A patent is presumed valid. 35 U.S.C. § 282; *see also Pfizer, Inc. v. Apotex, Inc.*, 480
8   F.3d 1348, 1359 (Fed. Cir. 2007). This presumption can be rebutted only by clear and
9   convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship.*, 131 S. Ct. 2238 (2011). Medicis'
10  '355 Patent issued on August 17, 2010 after review by the PTO Board of Appeals. Medicis
11  was entitled to rely upon its presumptive validity. *See* ECF 53 at 14. The issued claims of
12  the '355 are straightforward. The independent claims required a pad, a container, and a
13  composition that "has a viscosity which is low enough for the composition to substantially
14  uniformly absorb onto the pad via capillary action, and high enough to be substantially
15  retained on the pad, not the container." *See* ECF 53 at 5-14. Only the dependent claims
16  include numerical viscosity limitations. *Id.*

17       Around August, 2010, an Acella sales sheet came to the attention of Medicis. *See*
18  ECF 1-1. The sales sheet claimed that Acella's new product "competes with" Triaz®
19  Foaming Cloths, indicating that it could be used to replace Medicis' product. *Id.* On August
20  12, 2010, Medicis' counsel sent a cease and desist letter to Acella, attaching the sales sheet.
21  *Id.* Medicis advised Acella that the '355 Patent was about to issue, and requested samples of
22  Acella's product for analysis. *Id.*

23
24
25

26                  Acella made this assertion despite the fact that the
27  independent claims of the allowed application did not include a numerical limitation on
28  viscosity.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Acella did not provide a sample of its product, expecting Medicis to rely on its

2    counsel's assertions                                   Medicis had no reason to

3    believe that Acella was telling the truth.  In fact,

4                                                ECF 53 at 12-13), and that Acella knew that

5    it had never correctly tested the liquid's viscosity.[1]

6    Medicis filed suit against Acella on August 19, 2010.[2]  *See* ECF 1.  Though it was

7    denied the opportunity to test a sample of Acella's product, Medicis filed suit in good faith

8    reliance upon its own claim construction analysis, and the description provided in Acella's

9    sales sheet.  A similar pre-suit analysis has been upheld as a sufficient investigation.  *See,*

10   *e.g., Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004)

11   (affirming district court's finding of adequate pre-suit investigation where patentee relied

12   upon the accused infringer's advertising and labeling statements regarding the accused

13   product). [3]

14   It is important to note that during all this time, Acella was doing everything it could to

15   block Medicis' pre-filing investigation.  Not only did Acella refuse to provide a sample for

16   testing,

17   *See* p. 17-18, *infra*.   Also, Acella told Medicis that its products used a liquid having a

18

19                                   *See* p. 18, *infra*.

20

21   [1] Acella has claimed at other times during this litigation either their original or
     "reformulated" liquid composition has a viscosity of over 10,0000 cps when tested with the
22   standard in the claims, however, these claims have always proven to be false. *See, e.g.*, ECF
     260 at 16-17; ECF 255 at 20-23; ECF 275 at 1-5; ECF 276 at 1-4.
23   [2] Acella raises the point that Medicis made various claims on "information and belief," but
     does not explain how this forms a basis for an improper pre-suit investigation.
24   [3] Like the accused infringer in *Q-Pharma*, Acella erroneously relies upon *Judin v. United
     States* to support its claim that Medicis' pre-suit investigation was inadequate.  110 F.3d 780
25   (Fed. Cir. 1997).  In *Q-Pharma*, the court noted crucial distinctions in the facts of the *Judin*
     case which explain why Acella's reliance on that case is misplaced: "In *Judin*, we concluded
26   that the district court abused its discretion in not awarding sanctions because the patentee had
     not attempted to obtain a sample of the accused product and had not compared the accused
27   device with the patent claims prior to filing suit." *Q-Pharma*, 360 F.3d at 1302.  Here,
     Acella denied Medicis' request for a sample of its product.  Even without a sample, Medicis
28   used the information provided in Acella's sales sheet to compare its product with the
     straightforward claims of the '355 patent before filing suit.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Having gone to such lengths to frustrate and mislead Medicis' pre-filing investigation, Acella should not now be heard to complain that Medicis' pre-filing investigation was inadequate.

**B.    Medicis' Preliminary Injunction Motion Was Brought in Good Faith**

Acella makes several allegations regarding Medicis' preliminary injunction motion. When the facts are accurately presented, it can be seen that Medicis proceeded in good faith.

**1.    Medicis' Preliminary Injunction Motion Was Filed to Protect Its Rights as a Patentee**

A patent owner has the "right to exclude others from making, using, and selling the invention and to enforce those rights until [its patents are] held invalid [or expire]." *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003). It is well settled that courts do not find a case exceptional under § 285 when a party vigorously enforces a presumptively valid patent, even where that patent is later invalidated. *Id.*

**2.    Medicis Properly Moved for Preliminary Injunction Based on the Prospect of Irreparable Harm**

When Medicis filed its Preliminary Injunction Motion, it argued that it would suffer several forms of irreparable harm. One form of irreparable harm was that Acella would likely not be able to pay an award of damages. *See, e.g.*, ECF 53, 83, 93, 134. Acella objected to discovery on this issue, which the court considered at a hearing on January 11, 2011. *See* Trans. of Jan. 11, 2011 Hearing (Exh. B). This Court ruled that it would not allow discovery on this category of irreparable harm. The Court acknowledged that the cases cited by Medicis supported its position that an inability to pay a judgment was a form of irreparable harm. However, the Court declined to follow those cases absent controlling 9th Circuit precedent. *Id.* at 4. This is evidence of Medicis' good-faith pursuit of this fairly contested issue.

Medicis also relied on other categories of irreparable harm in support of its preliminary injunction motion. ECF 53 at 18-20; ECF 108 at 7-10. Medicis even showed actual evidence of irreparable harm in the form of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    ECF 108 at 7-10.[4]    Acella

2    dismisses this evidence as "manufactured," but this phrase is not evidence, and certainly is

3    not proof by clear and convincing evidence of a lack of good faith by Medicis.

4          **3.**    **Medicis Was Consistently Clear About its Intention to Continue the**

5                  **Commercialization of the '355 Patent After March, 2011**

6          Medicis' preliminary injunction papers were very clear about it intentions to

7    commercially exploit the '355 Patent. At the commencement of this action, Medicis did so

8    by selling its Triaz® Foaming Cloths BPO product as a prescription product. In Medicis'

9    opening brief, Medicis acknowledged the FDA recommendation that BPO products be sold

10   over the counter ("OTC") after March, 2011. ECF 53 at 19. Medicis' opening brief went on

11   to point out that after March, 2011,

12                                       ECF 53 at 19; ECF 53-20

13   at 2-3.

14                 ECF 108 at 10; T. McCauley Feb. 4, 2011 Dep. Trans. at

15   28, 144, 128-30, 149-61, 182-89 and 212-22 (Exh. C). One of the forms of irreparable harm

16   cited by Medicis in support of its preliminary injunction motion was the

17

18

19         Acella now argues at several points in its brief that Medicis hid its intentions from the

20   Court, and planned all along to "exit the market," and that this was in some way material to

21   the preliminary injunction motions. ECF 293 at 6, 15. In truth, Medicis was consistently

22   open and accurate concerning (1) its pre- and post- March, 2011 commercialization plans,

23   (2) how it would work to adjust to the March, 2011 OTC shift,[5] and (3) how Acella's

24

25

26   [4]  The complete record of Mr. McCauley's testimony is clear.

27   [5]  Acella's counsel acknowledged that Medicis was

28   email exchange (Feb. 21, 2011) (Exh. D).        R. Kurtz and T. Suddath

infringement was interfering with those plans. This evidence shows Medicis' good faith in its preliminary injunction motion and its maintenance of this action.

### 4. The Court Did Not Deny Acella's Motion for a Stay Because of Medicis' Preliminary Injunction Motions

Acella argues that its two attempts to stay this action were foiled by Medicis' somehow improper preliminary injunction motion. This ignores the Court's stated rationale for denying Acella's motion. The Court explained "[e]ven if the Court denies the preliminary injunction, the Court would not look with favor on a renewed motion to stay. In general, the Court disfavors indefinite and potentially lengthy stays pending the outcome of external proceedings," and noted that Acella chose to file an *ex parte* reexamination, the results of which would not bind Acella. ECF 130 at 2.

### 5. Mr. Hampton's Declaration Was Properly Based on Available Information

Acella makes much of some preliminary damages calculations in a declaration in support of Medicis' preliminary injunction motion. Scott Hampton, Medicis' damages expert, submitted his declaration before damages discovery was complete, and based it on the information obtained from Acella to that point. ECF 53-14 at 2-6. The purpose of Mr. Hampton's declaration was to provide a preliminary estimate of the potential damages that Acella's might have to pay. It was not his final damages estimate. ECF 53 at 4-5.

Mr. Hampton's declaration stated that Acella had not yet provided any estimates of its projected sales of product between then and the trial date, and that his preliminary estimate was based on the liquid composition that Acella said it had on hand at that time. ECF 53-14 at 5. His declaration explains that he took the total amount of bulk liquid composition that Acella had on hand (based on documents provided by Acella), and calculated how many BPO foaming cloths could be made with that material. *Id.* at 5-6. Mr. Hampton's methodology was made clear in Medicis' briefs and Mr. Hampton's declaration.

As the litigation progressed, further facts were developed including sales data that Acella later produced. Mr. Hampton then submitted his pre-trial expert report with a lower

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

lost profits estimate. Acella offers no reason why it thinks that Mr. Hampton's willingness to revise his preliminary lost profits estimate after discovery was completed is clear and convincing evidence of bad faith. Indeed, it shows he and Medicis took a good faith approach to the evidence provided by Acella later on in discovery.

### 6.    The Court *Sua Sponte* Rescheduled the Preliminary Injunction Hearing, Creating an Irreconcilable Conflict

Acella contends that Medicis' withdrawal of its preliminary injunction motion is evidence of bad faith on Medicis' part. Acella offers no reason why this is so, other than to label it "disingenuous." The facts tell a different tale.

The preliminary injunction hearing was originally scheduled for the same date as the Markman hearing, February 23, 2011. ECF 65. The Court will recall that its docket was particularly heavy at that time, and that a judicial emergency had just been declared in the District of Arizona. On February 10, 2011, just 13 days before the scheduled preliminary injunction hearing, the Court *sua sponte* rescheduled the hearing for March 29, 2011, over a month after the originally scheduled date. ECF 131.

As it happened, Medicis' expert witness, Rodger Bogardus had an insurmountable scheduling conflict for the new date making it impossible for him to attend. ECF 166, 167. Mr. Bogardus' testimony was crucial, and Medicis did not want to proceed without it. This put Medicis in the difficult position of having to ask for a further postponement of the preliminary injunction hearing, which would have defeated the motion's purpose. Medicis' reluctant withdrawal of its motion simply acknowledged the facts as they then existed, through no fault of the parties or the Court. *Id.* None of these facts evidence bad faith on the part of Medicis.[6]

Acella does not offer any contrary evidence. Acella simply announces that Medicis' withdrawal of its preliminary injunction motion was "disingenuous." This mere label applied by counsel is not only incorrect, it is not clear and convincing evidence of anything,

---

[6] At the same time, Medicis asked the Court for an expedited trial date, but the Court was unable to do so. ECF 167, 190 and 195.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  much less bad faith. Acella also complains that the three months preceding February 23rd

2  were "wasteful." However, those three months were spent preparing for the Markman

3  Hearing (which went ahead as scheduled) and conducting discovery necessary for trial.

4      **C.**    **Medicis Pursued This Litigation In Good Faith**

5      Acella alleges that Medicis' general conduct of this litigation was in such bad faith as

6  to constitute litigation misconduct sufficient to make this case exceptional within the

7  meaning of § 285.

8      **1.**    **The Applicable Legal Standard**

9      As a preliminary matter, it will be helpful to review the cases that have dealt with

10  such claims by alleged infringers, and to consider the fact patterns that have (and have not)

11  been sufficient to support such a claim.

12      In cases where courts have found that patent litigation was pursued in bad faith, the

13  patentee falsified, suppressed, or spoiled evidence, proceeded in contempt of orders, refused

14  to participate in discovery, or maintained the action knowing that it was "objectively

15  baseless." *In Atlantic Const. Fabrics, Inc. v. Dandy Prods., Inc.*, bad faith was found where

16  a patentee waited until trial to disclose it had tested the accused product and was aware the

17  accused product could not possibly infringe. 64 Fed. Appx. 757 (Fed. Cir. 2003). In *Eon-*

18  *Net LP v. Flagstar Bancorp*, the patentee refused to respond in good faith to discovery, at

19  one point responding to interrogatories concerning the level of skill in the art by "snidely"

20  saying that "the skill in the art required is that sufficient to converse meaningfully with

21  Mitchel Medina [the principal of the plaintiff]." 653 F.3d 1314, 1324-25 (Fed. Cir. 2011).

22  The patentee in *Eon-Net* also refused to engage in the claim construction process, and

23  spoiled documentary evidence. *Id.* at 1325. In *Dominant Semiconductor v. Osram GmbH*,

24  the court held that that "To be objectively baseless, the infringement allegations must be

25  such that no reasonable litigant could reasonably expect success on the merits." 524 F.3d

26  1254, 1260 (Fed. Cir. 2008) (citations omitted). Facts such as these, and similar egregious

27  conduct, is required to carry the burden of showing by clear and convincing evidence that an

28  action was maintained in bad faith.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

On the other hand, the mere fact that a patentee did not ultimately succeed in its infringement action is not sufficient to constitute a clear and convincing showing of bad faith. Thus, courts have refused to find cases exceptional simply because a patentee's arguments did not ultimately prevail. In *Old Reliable Wholesale, Inc. v. Cornell Corp.*, the Federal Circuit reversed the district court's exceptional case finding where the patentee's alleged litigation misconduct consisted only of continued assertions of infringement after adverse court rulings, and a refusal to engage in settlement negotiations. 635 F.3d at 539. In *Computer Docking Station Corp. v. Dell, Inc.*, the Federal Circuit upheld the district court's refusal to find a case exceptional where the patentee's disavowal in prosecution history did not make infringement action "objectively baseless," and despite the patentee's proceeding with litigation in the face of the court's adverse claim construction. 519 F.3d 1366, 1380 (Fed. Cir. 2008). *See* p. 3, *supra.*

### 2.    Medicis Pursued its Substantially Successful Claim Construction Position in Good Faith

The Parties vigorously contested several claim construction issues, which the Court resolved after a Markman hearing. Each party presented its arguments, and expert witnesses—Medicis relying on Rodger Bogardus and Acella relying on Edith Mathiowitz.

During the Markman hearing, this Court credited " [t]he testimony and declarations of Mr. Bogardus, a person highly skilled in the art of topical drug delivery systems, [which] support the Court's finding." ECF 148 at 15. This is evidence of Medicis' good faith leading up to and during the Markman hearing. On the other hand, the Court found that Ms. Mathiowitz, Acella's claim construction expert, "[did] not provide much aid to the Court." *Id.* at 16.

As a result of the Markman process, the Court adopted a construction that agreed in significant part with the positions advanced by Medicis (e.g. the definiteness of the claims, the meaning of "container"), though not all of them. Taken as a whole, the Markman process illustrates that Medicis litigated the claim construction issues fully and in good faith.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Acella contends that Medicis' argument that the 10,000 cps limitation was not part of

2    the independent claims is evidence of bad faith. When the Court addressed this issue, the

3    Court acknowledged that Medicis correctly invoked the doctrine of claim differentiation,

4    which created a presumption against Acella's argument. ECF 148 at 16. The Court also

5    noted that Medicis properly invoked the doctrine that claims have their "ordinary meaning,"

6    which created yet another "heavy presumption" against Acella's proposed construction.

7    ECF 140 at 17. The Court ultimately found that both of these presumptions were overcome,

8    but not that they were improperly invoked or that they were raised in bad faith.

9    When evaluating the good faith of the parties' conduct during the Markman process,

10    the Court should be mindful of the Federal Court's holding in *iLOR LLC v. Google*: "The

11    question is whether [the patentee's] claim construction was so unreasonable that no

12    reasonable litigant could believe that it would succeed." 631 F.3d at 1378. It is clear that

13    Medicis' positions on the claim construction issues were grounded in the case law, were

14    offered in good faith, and were to a great degree successful. As to the claim construction

15    issue on which Acella prevailed, it must be remembered that, as the *iLOR* court noted,

16    "[s]imply being wrong about claim construction should not subject a party to sanctions

17    where the construction is not objectively baseless." *Id.* at 1380.

### 3. Medicis' Conduct Regarding Discovery Was in Good Faith

19    Acella further protests that Medicis did not answer certain discovery requests

20    regarding viscosity. ECF 293 at 8 n.8. In truth, Medicis repeatedly objected to Acella's

21    discovery requests because of Acella's poor drafting. Acella asked for information regarding

22    the "Triaz® products," which Acella itself had defined as including not only foaming cloths,

23    but pads, gels, cleansers, and other products not relevant to this litigation. This issue was

24    raised by Medicis during litigation and resolved by the parties. *See* E. Rumfelt email (June

25    9, 2011) (Exh. E). Routine discovery disputes that are resolved by way of the meet-and-

26    confer process are not clear and convincing evidence of bad faith by either party.

27    Acella alleges that Medicis was not forthcoming about the viscosity of its liquid

28    composition used in Triaz® Foaming Cloths. ECF 293 at 8. The facts show otherwise.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   First, Medicis produced to Acella samples of its liquid composition on December 1, 2010.

2   *See* T. Suddath letter (Dec. 1, 2010) (Exh. F).  However, Acella never tested the viscosity of

3   the samples according to the method specified by the patent, or at least has never disclosed

4   the results of such tests. Acella also points out some viscosity data produced by Medicis that

5   was obtained using a different method than is called for by the patent.  ECF 293 at 8, FN 8.

6   However, tests by the wrong testing method are irrelevant.   This is said by Acella to be

7   evidence of bad faith in "hiding the ball" concerning the viscosity of its liquid.  Clearly, it is

8   not.[7]

### 4.    Medicis' Position on Obviousness is in Good Faith, and is the Subject of An Appeal to the Federal Circuit

10   Acella also claims that Medicis' position regarding obviousness was somehow

11   improper.   Acella admits that many claims of the '355 Patent were upheld in the

12   reexamination of the '355 patent, but objects that Medicis did not specifically argue Acella's

13   position for it.  ECF 293 at 9, 9 n.11.  Acella could have made its argument for itself, but it

14   chose to file an *ex parte* reexamination instead of an *inter partes* reexamination where it

15   would have been bound by the result.  ECF 130 at 2.[8]

16   As the Court knows, the PTO confirmed the validity of claims of the '355 Patent,

17   although the court was constrained to reach its own conclusion.  ECF 278.  To be clear, the

18   PTO confirmed the validity of twelve of the '355 Patent's claims, four of which Medicis

19   contends were infringed by Acella's product.  Office Action (Aug. 12, 2011) (Exh. G); ECF

20   260.

### 5.    Depositions of Mr. Popp and Mr. Deas Were Good Faith Inquiries Regarding Acella's Spoliation of Evidence and Foreseeability of Damages

23   Acella objects that certain questions during depositions were in regard to Acella's

24   willfulness, which was not at issue.  ECF 293 at 10.  In truth, these questions were directed

---

[7] Acella also alleges that a Medicis 30(b)(6) designee (and not an expert witness) refused to agree with the assumption of Medicis' damages (not validity) expert in a report that he had never read, regarding whether Medicis' product practiced the patent, over the objections of Medicis' counsel that the question called for a legal conclusion.  ECF 293 at 8, n.10 and 17.

[8] Acella also complains that Medicis "buried the Examiner with voluminous pleadings in this case."  However, those were Acella's own pleadings and if they were excessively voluminous, only Acella can be blamed.  ECF 293 at 9 nn.11 and 17.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   toward the discovery of facts relating to Acella's                    ; and foreseeability of

2   damages.    In the context of :                        "[a]s soon as a *potential claim is*

3   *identified*, a litigant is under a duty to preserve evidence which it knows or reasonably should

4   know is relevant to the action."  *Melendres v. Arpaio*, No. CV-07-2413-PHX-GMS, 2010

5   WL 582189, at *4 (D. Ariz. Feb. 12, 2010) (citation omitted) (emphasis added).  The law

6   will award lost profits damages where it was reasonably foreseeable that the patentee would

7   suffer lost profits.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995); *King*

8   *Instruments Corp. v. Perego*,  65 F.3d 941, 948 n.3 (Fed. Cir. 1995).  Mr. Popp and Mr. Deas

9   were in possession of facts directly relevant to these inquiries.

10       During  his  deposition,

11

12

13   (

14                                                        This testimony established

15   that Acella was aware of facts that triggered a duty to preserve evidence and made it

16   foreseeable that Medicis would suffer lost profits.  Therefore, these inquiries were clearly

17   conducted in good faith.

18       **6.    Medicis Did Not Withhold Any Requested Documents Before the**
        **Deposition of Nevin**
19

20       Acella alleges that Medicis produced documents that Acella requested for the

21   deposition of Mr. Nevin on the day of the deposition. ECF 293 at 11. This is incorrect. Mr.

22   Nevin submitted a declaration attached to Medicis' reply in support of its preliminary

23   injunction motion. *See* ECF 108-7.

24

25

26

27

28

T. Suddath email (Feb. 21, 2011, 1148 AM) (Exh. J).  In a reply by Medicis' counsel, Acella was informed that any such documents, if they existed, would be produced before the deposition.  *Id.*  None existed, and that is why none were produced.[9]

### 7.    Medicis' Marked Documents "Attorneys' Eyes Only" in Good Faith

Acella alleges that by marking certain documents "Attorney's Eyes Only" that Medicis kept its confidential information from management at Acella.  ECF 293 at 12.  This was precisely the point of the Court's protective order.  Art Deas, one of Acella's executives,

Exh. I at 27-44 and 64-77.  Without any explanations, Acella asserts that Medicis' unwillingness to give one such as Mr. Deas access to its confidential information is evidence of bad faith by Medicis.  In truth, the Attorney's Eyes Only documents contain huge amounts of competitive information—a fact that Acella has never questioned.  The Court's protective order was designed to keep this sort of information away from one such as Mr. Deas.  Moreover, if Acella truly believed that the documents were improperly designated pursuant to the protective order, Acella could—and should— have raised the issue in a timely manner using the procedures provided by the order.

### 8.    Medicis' Argument for Lost Profits is in Good Faith

Acella alleges that Medicis made a "defective" lost profits claim, but in the same breath acknowledges that even a non-practicing patentee can be eligible for lost profits damages.  ECF 293 at 17-18.  Whether lost profits damages were available here is a contested legal issue that the Court never reached.  In all its briefing and argument on this issue Acella has never questioned Medicis' good faith.  In truth, this was a live issue, fairly contested by the parties.  It is not evidence of any measure of bad faith.  *See* ECF 278, 282.

[9]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

15

### 9. Medicis Was Not Obligated to Accept Acella's Invitations to Mediate

Acella argues that Medicis' unwillingness to participate in settlement discussions constitute bad faith litigation tactics. This very issue was raised in *Old Reliable Wholesale* and rejected by the court. 635 F.3d at 549-50. Parties are not ordinarily required to participate in mediation, and unwillingness to do so is not bad faith litigation conduct.[10]

## IV. Acella's Own Litigation Misconduct Precludes it From Alleging That This Case is Exceptional

In determining whether a party is entitled to fees under 35 U.S.C. § 285, courts consider the conduct of both parties. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996). Moreover, even if a court finds that a case is exceptional, it enjoys considerable leeway to deny fees in light of the other party's own litigation misconduct. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997) (affirming district court's denial of attorney's fees where district found that requesting party's litigation conduct was "nearly as bad").

### A. Acella Spoiled Evidence Relevant to the Infringement Issue in This Case

Acella's spoliation of evidence has been well documented. *See, e.g.*, ECF 53 at 2, 14-15; ECF 108 at 3-4.

Medicis finally received a sample on November 9, 2011, almost three months after Medicis filed its complaint. Even then, Acella produced a sample from only one production lot of Acella's 6% liquid composition, and none of its 3% or 9% liquid compositions. E.

---

[10] Acella cites *ReedHycalog v. Diamond Innovations* in support of the proposition that failure to mediate is a form of litigation misconduct. ECF 293 at 18. In fact, the misconduct in *ReedHycalog* was contempt of a court order to participate in mediation. *ReedHycalog UK, Ltd. v. Diamond Innovations, Inc.*, No. 6:08-CV-325, 2010 WL 3238312, at *7 (E.D. Tex. Aug 12, 2010).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Rumfelt letter (Nov. 9, 2010) (Exh. L).  Two months later, Acella produced samples of its

2  3%, 6% and 9% liquid composition, but the sample sizes were too small to conduct viscosity

3  testing.  R. Kurtz letter (Jan. 7, 2011) (Exh. M).  *See also* ECF 108-3.  Acella finally

4  produced a testable sample of one production lot of its 3% liquid composition seven months

5  after the complaint was filed, which were shown to infringe the claims.  A. Alexander-

6  Daniels letter (Mar. 16, 2011); Suppl. Expert Report of J. Zwynenburg (Apr. 12, 2011)

7  (together Exh. N).[11]

8       Acella has not, to this day, produced a sample of any Acella's 9% product production

9  lots.  Despite receiving testable samples from individual production lots of the 3% and 6%

10  liquid composition, Medicis did not receive samples from any other production lots.  Medicis

11  will never be able to test the many lots of Acella's liquid composition that were destroyed.

12       **B.    While Destroying its Product, Acella Attempted to Frustrate Medicis' Pre-**

13           **Suit Investigation by Knowingly Misrepresenting the Properties of the**
         **Product**

14       During its pre-suit investigation, Medicis asked Acella for a sample of its product.

15  Acella did not provide a sample, but,

16

17

18

19

20

21

22                                This misrepresentation by Acella was

23  clearly an attempt to hide the truth from Medicis and to frustrate Medicis' pre-suite

24  investigation.

25

26

27  ————————————

28  [11] Curiously, Acella produced another sample of 6% liquid on June 8, 2011, however, it was
not being commercially used, and as such it was not tested.  E. Rumfelt letter (June 8, 2011)
(Exh. O).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### C.    Acella Intentionally Withheld Important Documents

In its brief, Acella alleges that Medicis produced documents one month after they were created. However, Medicis produced some documents five months after they were requested, and over seventeen months after they were created. On April 5, 2011, Medicis' counsel wrote to Acella's counsel asking for specific groups of documents that had been requested but not yet produced. R. Kurtz email (April 7, 2011) (Exh. R). On April 7, 2011, Mr. Kurtz responded that these documents "do not exist." *Id.* Then, on July 1, 2011, the last day of discovery, Acella finally produced these very documents, some created as early as February 2010. E. Rumfelt letter (July 1, 2011) (Exh. S). These documents included highly relevant material concerning Acella's creation and testing of its infringing product. *See* Exh. T. Thus, Acella did not tell the truth when it said that these documents "do not exist." Medicis was without the benefit of these documents during discovery, including depositions of Acella employees, and all other discovery activities. For this reason alone the Court should deny Acella's request to make this case "exceptional."[12]

### D.    Acella's Reformulation of its Liquid Composition is Evidence that Acella Held Medicis' Actions in Good Faith

Since December 2010, Acella has attempted to reformulate its product such that it will not infringe the '355 Patent by having a liquid composition viscosity above 10,000 cps. *See* ECF 275. Ultimately, they have been unsuccessful. *Id.* However, if Acella truly believed that Medicis' entire infringement claim was meritless and in bad faith, it would not have undertaken the significant expense of reformulation. The fact that Acella did try to reformulate its product to avoid infringement is plain evidence that Acella credited Medicis' allegations, and believed that its good faith pursuit put Acella at risk for being held liable.

---

[12] Acella also produced documents a week after discovery on July 8, 2011, containing some documents produced as early as August, 2010. E. Rumfelt letter (July 8, 2011) (Exh. U). Finally, Acella produced documents on October 10, 2011, over three months after the close of discovery, containing documents in Acella's possession as early as December, 2010. E. Rumfelt letter (Oct. 10, 2011) (Exh. V).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**V.    Acella Did Not Comply With Local Rule 54.2 Governing Fee Motions**

    **A.    Acella Failed to Consult With Medicis Concerning the Reasonableness of its Proposed Fees Before Filing This Motion**

Medicis' counsel emailed Acella's counsel on December 29, 2011, reminding them of the obligation to consult regarding the reasonableness of fees and expenses but Acella did not reply.  W. McNichol email (Dec. 29, 2011) (Exh. W).  Acella filed its brief and Consultation Statement on December 30, 2011 without any such consultation.  Acella did not comply with the strict consultation requirements of Local Rule 54.2 (including naming the parties involved), and therefore its Consultation Statement violates that rule.

    **B.    Acella's Time Entries Violate Local Rule 54.2**

Local Rule 54.2(e) includes very specific rules regarding time entries, including detailed examples of entries for telephone conferences, legal research, drafting papers and travel time, "so that the reasonableness of the charge can be evaluated."  The rules make it clear, for example, that conferences must identify all participants, and research and writing projects must identify the issue and pleading, paper or other document.  Despite this clear guidance, the majority of Acella's time entries do not comply with the Local Rule 54.2(e).

Attached are Acella's time entries, which have been annotated to indicate how they fail to comply with Local Rule 54.2 (e).  *See* Exh. X.  The defects in Acella's time entries fall into four main categories:

Category One:  Certain of Acella's time entries contain insufficient description such as not identifying participants, legal issues, pleading, or other paper. Some of these entries include redactions, wherein the relevant information may or may not be underneath.  This is in direct contradiction to Local Rule 54.2(e)(2) which requires Acella to "nevertheless furnish an adequate nonprivileged description."  Other time entries are unredacted, and yet still do not provide information.  Because of these defects, the Court will not be able to judge the reasonableness of these requests per Local Rule 54.2(e)(2);

Category Two:  Some of Acella's entries are omnibus entries, i.e. containing multiple tasks, such that "[t]he time devoted to each individual unrelated task performed on such day" cannot be determined as required by Local Rule 54.2(e)(1).  Because of this defect, the Court will not be able to apportion an award with specific misconduct.  *See* p. 3, *supra*;

Category Three:  Some of Acella's entries contain services unrelated to this case, for example, work performed on the reexamination in the USPTO, or work done on another case.  The Court should not make an award for these unrelated entries; and

<u>Category Four</u>:  Finally, some of Acella's entries are for travel time only in violation of Local Rule 54.2(e)(2)(D).

**C.   Acella's Expert Witness Invoices are Improper**

Attached are Acella's expert witness fees, which have been annotated to indicate how they fail to comply with Local Rule 54.2 (e).  *See* Exh. Z.  Local Rule 54.2(e) makes it clear that expenses must be itemized in the same way.  In its brief, Acella does not justify the reasonableness of its expert fees.  A review of the invoices for those fees provides hardly any information or justification, either.

[13] For clarity, this redaction appears in Acella's bill, and is not a Medicis redaction.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
**E.      Acella's Incomplete Time Entries Do Not Permit the Court to Evaluate the**
**Reasonableness of the Fees**
18
19    Local Rule 54.2(e)(2) requires that the time entries and fees properly identify the
20  services that are provided so that the "reasonableness of the charge can be evaluated" Most
21  of Acella's time entries and fee invoices do not provide the required information and that
22  their reasonableness can be evaluated.
23    **F.      Acella's Incomplete Time Entries Cannot be Associated With Any Specific**
**Acts of Alleged Misconduct**
24
25
26
27
28   [15] This was factually incorrect.  Once again, Acella's viscosity measurements were wrong.
_See_ p. 5, _supra_, n.1.

many those also have deficiencies making it impossible to evaluate their reasonableness. Since those entries to not correspond to alleged misconduct by Medicis, Acella should not now expect the Court to proceed blindly or make the effort required to identify those portions of its bill that are attributable to specific acts by Medicis. *See* p. 3, *supra*.

DATED this 20th day of January, 2012.

REED SMITH LLP

By *s/ Patricia Lee Refo*
   William J. McNichol, Jr.
   Thomas H. Suddath, Jr.
   2500 One Liberty Place
   1650 Market Street
   Philadelphia, PA 19103

and

   Patricia Lee Refo
   Kelly A. Kszywienski
   SNELL & WILMER L.L.P.
   One Arizona Center
   400 E. Van Buren
   Phoenix, AZ 85004-2202

   *Attorneys for Plaintiff/Counterclaim Defendant Medicis Pharmaceutical Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2012 I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

Ray K. Harris, Esquire
FENNEMORE CRAIG, P.C.
3003 North Central Avenue
Suite 2600
Phoenix, AZ  85012-2913
rharris@fclaw.com

Ryan A. Kurtz
Eileen H. Rumfelt
(ADMITTED PRO HAC VICE)
MILLER & MARTIN PLLC
1170 Peachtree Street N.E., Suite 800
Atlanta, Georgia 30309
rkurtz@millermartin.com
erumfelt@millermartin.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Acella Pharmaceuticals, LLC*


s/ Patricia Lee Refo
14367939

REED SMITH LLP
A limited liability partnership formed in the State of Delaware