**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medicis Pharmaceutical Corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>Acella Pharmaceuticals, LLC,<br><br>          Defendant. | No. CV 10-1780-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Defendant Acella Pharmaceuticals, LLC's ("Acella") Motion for Attorneys' Fees and Expenses (Doc. 280), Acella's Motion for Leave to File Excess Pages in Memoranda on Motion for Attorneys' Fees and Expenses (Doc. 290), Acella's Motion to File Memorandum in Support of Motion for Attorneys' Fees and Expenses Under Seal (Doc. 292), Plaintiff Medicis Pharmaceutical Corporation's ("Medicis") Joinder to Acella's Motion for Leave to File Excess Pages (Doc. 294), Medicis' Motion for Leave to File its Memorandum of Law in Opposition to Defendant's Motion for Attorneys' Fees and Expenses Under Seal (Doc. 296), and Acella's Motion to File Reply in Support of Motion for Attorneys' Fees and Expenses Under Seal (Doc. 298).  The Court now rules on the motions.

**I.      BACKGROUND**

Plaintiff Medicis Pharmaceutical Corporation ("Medicis") brought this patent infringement suit on August 19, 2010, claiming that certain products sold by Acella infringed

United States Patent No. 7,776,355 (the "Patent").  The Patent claims a topical drug delivery system comprised of a pad, a container, and a liquid composition that includes dermatologically active ingredients.

This Court conducted a *Markman* hearing on February 23, 2011 and issued an order construing four of the Patent's disputed claim terms on March 2, 2011 (Doc. 148).  Medicis also moved for a preliminary injunction, and the hearing on that motion was first scheduled for the same date as the *Markman* hearing.  However, because the Court had not yet had a chance to consider a pending motion from Medicis to amend its complaint, the Court bifurcated the preliminary injunction hearing from the *Markman* hearing and continued it to the following month (Doc. 131).  Medicis subsequently withdrew the motion for a preliminary injunction before the hearing occurred.  On November 3, 2011, the Court granted Acella's motion for summary judgment, holding that all of the asserted claims of the Patent were invalid for obviousness (Doc. 278).  Judgment was entered in favor of Acella and the complaint and action were dismissed.

Claiming that Medicis did not bring or maintain this action in good faith, Acella now moves the Court to award attorney fees under 35 U.S.C. § 285 and other expenses under the Court's inherent powers.  Accompanying the motion are additional motions from each party to exceed the standard page limit for their briefing on Acella's motion for attorney fees and motions to seal portions of the parties' briefing.  The Court now rules on these motions.

## II.   ANALYSIS

### A.  Motions to Exceed Page Limits

Acella has requested a five-page extension for its motion for attorney fees, and Medicis has similarly requested a five-page extension for its response to Acella's motion. The parties assert that the requested extensions are necessary in order to adequately discuss all relevant issues.  Additionally, both parties have already either lodged or filed briefs that meet the proposed extended page limitation.  The Court finds good cause exists for granting both parties' requests for page extensions.  The parties' motions for leave to file excess pages are therefore granted.

1

**B.   Motions to Seal**

2

3   Regarding the parties' motions to seal, the Court starts with a strong presumption in

4   favor of public access to court records.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d

5   1122, 1135 (9th Cir. 2003).  A party that wants to seal any part of a dispositive motion must

6   overcome this strong presumption with compelling reasons for sealing.  *Kamakana v. City*

7   *and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  To seal any part of a non-
dispositive motion, a party must demonstrate good cause.  *Id.* at 1180.

8   Here, Acella seeks to seal the following information in its non-dispositive motion for

9   attorney fees and other expenses: the amount of Medicis' estimated damages, excerpts from

10   deposition transcripts and other documents designated as confidential by Medicis, and an

11   itemized summary of its attorney fees and expenses.  Acella seeks to seal the following

12   information in its reply brief: Medicis' marketing strategy, Acella's product formulation, and

13   attorney billing information.  Finally, Medicis seeks to seal various exhibits attached to its

14   response, including declarations, various emails and deposition transcripts, viscosity test

15   data, sales and marketing information, and various other documents.

16   Much of this information has been previously sealed by the Court, has been

17   designated as confidential by the parties pursuant to the protective order in this case, or could

18   otherwise potentially harm the parties if released publicly because of its confidential and

19   sensitive nature.  The Court therefore finds that both parties have demonstrated good cause

20   for filing these various documents and excerpts of documents under seal.  The parties'

21   motions to seal are granted.

22

**C.   Attorney Fees under 35 U.S.C. § 285**

23   35 U.S.C. § 285 states that a "court in exceptional cases may award reasonable

24   attorney fees to the prevailing party" in a patent infringement suit.  A determination of

25   whether such fees are warranted involves a two-step process.  "First, a district court must

26   determine whether the prevailing party has proved by clear and convincing evidence . . . that

27   the case is 'exceptional.'" *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir.

28   2003) (internal citations omitted).  "Second, if the district court finds the case to be

exceptional, it must then determine whether an award of attorney fees is appropriate." *Id.* at 1328. The Federal Circuit has "repeatedly identified as 'exceptional' those cases involving 'inequitable conduct before the Patent Office; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Id.* at 1329 (quoting *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001)) (internal brackets omitted). Moreover, "[i]n the context of fee awards to prevailing accused infringers, [the Federal Circuit has] observed that § 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer . . . and [has] upheld findings of exceptionality to prevent such an injustice only when the patentee has procured its patent in bad faith . . . or has litigated its claim of infringement in bad faith." *Id.* (internal citations omitted). In light of this high standard, recovery of attorney fees under § 285 clearly was never contemplated to "become an ordinary thing in patent suits." *Id.* (internal citations omitted).

Acella asserts that this case is exceptional based primarily on the following three arguments: 1) Medicis failed to complete an adequate pre-suit investigation before filing its complaint; 2) Medicis filed an "unfounded and misleading" motion for preliminary injunction; and 3) Medicis otherwise engaged in a pattern of misconduct throughout the litigation. As discussed below, the Court does not view any of these allegations, either individually or in combination, as sufficient to warrant an award of attorney fees under § 285. Hence, this is not an exceptional case and Acella is not entitled to attorney fees.

### 1. Medicis' Pre-Suit Investigation

The Federal Circuit has stated that "the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004) (internal citations omitted).[1] However, neither a formal infringement analysis nor a formal claim chart is

---

[1] The Court notes that the parties both argue under the Rule 11 standard for imposing sanctions for failure to perform an adequate investigation prior to finding suit. Fed. R. Civ. P. 11. However, Acella has not moved this Court to impose sanctions against Medicis under

required. *See id.* at 1301 ("[A] claim chart is not a requirement of a pre-filing infringement analysis, as the owner, inventor, and/or drafter of a patent ought to have a clear idea of what the patent covers without the formality of a claim chart."). Rather, a reasonable inquiry may "simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Id.* at 1302.

Here, prior to filing the infringement suit, Medicis obtained an Acella sales sheet that claimed that a new Acella product was competing with a Medicis product. Concerned that the Acella product infringed Medicis' soon-to-issue patent covering its product, Medicis soon after sent Acella a cease and desist letter and also requested samples of the Acella product for further analysis. Acella responded the following day with a letter asserting its counsel's opinion that Acella's product did not infringe the Medicis patent, along with a written analysis of the patent and Acella's product supporting that opinion. Acella did not provide any product samples to Medicis. Six days later, Medicis filed suit against Acella in what Medicis claims was "good faith reliance upon its own claim construction analysis, and the description provided in Acella's sales sheet." Doc. 295 at 5.

Nevertheless, Acella argues that by not heeding the advice of Acella's counsel on the issue of infringement and instead relying on the Acella sales sheet, Medicis failed to perform an adequate, good faith pre-suit investigation.[2] The Court does not find Acella's position

---

Rule 11. Rather, Acella relies on this standard to support its arguments that Medicis' pre-suit investigation with respect to any infringement by Acella was insufficient and thus is evidence that this suit is an "exceptional case" for purposes of 35 U.S.C. § 285. Similarly, Medicis uses the Rule 11 standard to argue that its pre-suit investigation was adequate and performed in good faith and thus does not support a finding that this suit is an "exceptional case."

[2] Acella also claims that Medicis, by stating some of its claims in its complaint "on information and belief," has admitted that it did not perform an adequate pre-suit investigation. However, Acella does not provide any legal support for this assertion. Indeed, pleading facts on information and belief is acceptable "where a belief is based on facts that make an inference of liability plausible." *Mills v. Bristol-Myers Squibb Co.*, No. CV 11-00968-PHX-FJM, 2011 WL 4708850, at *2 (D. Ariz. Oct. 7, 2011) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Here, Medicis had sufficient factual information from its own patent and the Acella sales sheet to make an inference of

persuasive.  While it is true that Medicis could have done more to investigate any potential infringement by Acella, the evidence demonstrates that Medicis made a good faith, though informal, pre-suit investigation.  That is, the fact that Medicis simply construed the claims of its own patent and then compared that construction to the product information in Acella's sales sheet is not itself sufficient to establish that Medicis initiated this suit in bad faith.  *See Q-Pharma*, 360 F.3d at 1301-02 (finding pre-suit investigation that relied "solely on [the alleged infringer's] advertising statements and did not include a chemical analysis of the accused product" was sufficient).

Furthermore, though Medicis' pre-filing claim construction was ultimately not accepted by this Court, it was not frivolous.  *See id.* at 1301 ("[I]t is not for us to determine whether Q-Pharma's pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous.").  Prior to filing suit, Medicis interpreted the asserted independent claims of its patent, which at the time were subject to a statutory presumption of validity, *see* 35 U.S.C. § 282, to not include numerical viscosity limitations.  On the other hand, Acella, in its response to Medicis' cease and desist letter, asserted both that Medicis' patent was invalid for indefiniteness and that the independent claims included numerical viscosity limitations based on prosecution disclaimer.[3]  Both parties maintained these respective positions throughout the litigation, and this Court ruled in the *Markman* order that the Medicis patent was not indefinite but that the independent claims did in fact include numerical viscosity limitations.  Doc. 148 at 13-20.

In the *Markman* order, the Court noted with regard to the issue of indefiniteness that Acella's expert merely provided "conclusory assertions that [did] not provide much aid to the Court . . . [and] certainly [did] not rise to the level of the clear and convincing evidence required to demonstrate the invalidity of the Patent."  *Id.* at 16.  On the other hand, Medicis

---

infringement plausible.

[3] Prosecution disclaimer is a well established doctrine that "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).

was entitled to a "heavy presumption" that the language of the independent claims, which did not expressly include numerical viscosity limitations, carried its usual and customary meaning. *See id.* at 17; *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Further, the Court found that prosecution disclaimer applied to rebut that presumption only after determining that Medicis' disavowal in the prosecution history of viscosities over 10,000 centipoise was "clear and unmistakable." *Id.* at 17. Though Medicis ultimately lost on this issue, the Court does not find any basis for determining that Medicis' arguments that this high standard was not met were made in bad faith. Indeed, those arguments were at least as reasonable as Acella's arguments for indefiniteness.

It is therefore difficult to accept Acella's argument that Medicis' pre-suit position on infringement was frivolous or otherwise based on an inadequate investigation. Accordingly, the Court does not find that Medicis failed to make a sufficient, good-faith pre-suit investigation, and thus Acella has failed to show that Medicis' conduct prior to filing its complaint supports a finding that this case is "exceptional." *See* 35 U.S.C. § 285.

### 2.   Medicis' Motion for a Preliminary Injunction

Acella also argues that Medicis' aborted motion for a preliminary injunction is itself sufficient to find that this is an exceptional case. Acella primarily relies on what it asserts was Medicis' bad faith reliance on an overinflated damages estimate and Medicis' failure to in good faith keep the Court and Acella apprised of Medicis' intent to exit the prescription market. Acella further asserts that this conduct was part of Medicis' efforts to "manufacture" irreparable harm for the purposes of obtaining a preliminary injunction. Thus, in Acella's view, Medicis' actions constitute "litigation misconduct and unprofessional behavior" that are themselves sufficient to make this case exceptional under § 285. *See Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003).

The Court does not agree with Acella's characterization of Medicis' conduct. Acella has not established that Medicis ever attempted to mislead either the Court or Acella about Medicis' plans with regard to product sales. Rather, on more than one occasion Medicis stated its intent to explore the possibility of either selling its product in the over-the-counter

market itself or licensing the product in the over-the-counter market after March, 2011.  *See, e.g.*, Doc. 49 at 19; Doc. 78 at 7.  However, at the same time Medicis also expressed its concern about not finding any licensee at all because of its perceived threat from what it deemed to be "an unauthorized generic" sold by Acella.  *Id.*

The deposition testimony of Thomas J. McCauley, a vice president at Medicis, confirms Medicis' position.  At that deposition, Mr. McCauley stated that Medicis would likely "aggressively sell [its] prescription product . . . until the FDA monograph of March 3, 2011." Doc. 293-7 at 3.  Mr. McCauley went on to say that after that date, Medicis "would then have to come up with other strategies" regarding the sales and marketing of its Triaz product.  *Id.*  If anything, the Court finds that this testimony establishes that Medicis' plans for its product were uncertain and still being sorted out, which is consistent with Medicis' representations to this Court.  Furthermore, even if the future of its product was somewhat uncertain, Medicis, as a holder of a patent that was presumed to be valid at the time, had a right to seek relief through a preliminary injunction.  *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) ("A patent owner has the right to exclude others from making, using, and selling the invention and to enforce those rights until its patents are held invalid or expire." (internal quotation and brackets omitted)).

Additionally, the fact that Medicis may have erred on the high side in calculating its estimated damages also does not support a finding that it was acting in bad faith.  Acella has not established that the damages estimate was made in bad faith or otherwise not properly based on all of the information available to Medicis' expert at the time.  Also, Acella has not established that Medicis' attempt to use its high damages estimate as a basis for irreparable harm because of Acella's likely inability to pay those high damages was made in bad faith.  Though this Court did not accept Medicis' argument because of the lack of Ninth Circuit precedent on the issue, the Court nevertheless acknowledged that it was declining to follow the cases to which Medicis cited to support its argument.  The Court did not find, however, that Medicis' position was frivolous or otherwise argued in bad faith.  Furthermore, Medicis also offered other categories of irreparable harm to support its motion, including Medicis'

limited ability to pursue licensing agreements.  *See* Doc. 71 at 18-20.

Finally, the fact that Medicis eventually withdrew its motion for a preliminary injunction also does not support a finding of litigation misconduct here.  The reason that Medicis offers for its decision to withdraw the motion is that, after this Court *sua sponte* rescheduled the preliminary injunction hearing, Medicis' expert witness was unable to attend the hearing at the rescheduled date.  Rather than seek further postponement to a date at which the expert was available, Medicis instead opted to withdraw the motion and seek an expedited trial date, which this Court declined to grant.  Though Acella labels Medicis' actions as "disingenuous," Acella has not established by clear and convincing evidence that Medicis withdrew its motion in bad faith.

In sum, Acella has not established by clear and convincing evidence that Medicis' conduct with respect to its motion for a preliminary injunction was in bad faith or otherwise sufficient to warrant damages under § 285.

### 3. Medicis' Additional Conduct throughout the Litigation

Acella also asserts that it is entitled to fees because Medicis engaged in a pattern of misconduct throughout the course of this litigation, including allegations that Medicis took unsupportable positions on viscosity limitations and obviousness, failed to properly allege damages, took improper deposition testimony, improperly cancelled and rescheduled a deposition, failed to timely produce documents, failed to designate documents as confidential in good faith, and refused to mediate.  The Court finds that Acella has not established that any of this conduct, either as individual acts or combined, is sufficient to warrant attorney fees under § 285.  Rather, Medicis' explanations for its actions and its assertions that they were carried out in good faith are at least as plausible as, and often more plausible than, Acella's claims that Medicis' actions amount to a pattern of bad faith misconduct.  Acella therefore is not entitled to an award of attorney fees because it has not established by clear and convincing evidence that it suffered a gross injustice due to any bad faith litigation on the part of Medicis.  *See Forest Labs.*, 339 F.3d at 1329.

Because the Court does not find this case to be exceptional for purposes of § 285, it

need not decide whether an award of attorney fees is appropriate. *See id.* at 1328.  Thus, the Court will not consider the reasonableness of the fees requested by Acella.  Nor will the Court address Medicis' arguments that Acella's own misconduct should preclude it from alleging that this case is exceptional and that Acella has not complied with Local Rule 54.2.

### D.   Acella's Request for Expert Witness Expenses

Acella is also seeking to recover its expert witness fees and expenses under the Court's inherent power.  "The use of this inherent power is reserved for cases with 'a finding of fraud or abuse of the judicial process.'" *Takeda Chem. Indus. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)).  As discussed above, the Court does not find that Medicis has acted in bad faith in bringing this suit.  Therefore, this is not a case in which it would be appropriate for the Court to award expert witness fees as sanctions under its inherent power.  Acella's request for expert witness fees and expenses is denied.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** denying Acella's Motion for Attorneys' Fees and Expenses (Doc. 280).

**IT IS FURTHER ORDERED** granting Acella's Motion for Leave to File Excess Pages in Memoranda on Motion for Attorneys' Fees and Expenses (Doc. 290) and Medicis' Joinder to Acella's Motion for Leave to File Excess Pages (Doc. 294).  The Clerk shall file into the record the documents currently lodged at Docket 291.

///
///
///
///
///
///
///

**IT IS FURTHER ORDERED** granting Acella's Motion to File Memorandum in Support of Motions for Attorneys' Fees and Expenses Under Seal (Doc. 292), Medicis' Motion for Leave to File its Memorandum of Law in Opposition to Defendant's Motion for Attorneys' Fees and Expenses Under Seal (Doc. 296), and Acella's Motion to File Defendant's Reply in Support of Motion for Attorneys' Fees and Expenses Under Seal (Doc. 298).  The Clerk shall file under seal the documents currently lodged at Dockets 293, 295, and 299.

DATED this 14th day of June, 2012.

James A. Teilborg
United States District Judge

- 11 -